### THE MARY P. MOSQUITO (two cases).

#### (District Court, E. D. Virginia. May 18, 1906.)

COLLISION—STEAMER AND SCHOONER—MUTUAL FAULT.

> A schooner and steamer both *held* in fault for a collision between them at night in Chesapeake Bay, the schooner for changing her course so as to cross that of the steamer, and the latter for failing to sooner see the schooner, and for afterward continuing her speed of 15 miles an hour with only a slight change of course, when there was at least risk of collision in so doing.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, § 52.]

In Admiralty. Cross-libels for collision.

On the evening of 18th of March, 1906, about 7:30 o'clock, the steamer Norfolk, a vessel of 1,248 gross tons burden, length 246 feet, beam 46 feet, one of the line of steamers plying between the cities of Norfolk, Va., and Washington, D. C., while en route to Washington, at a point in Chesapeake Bay between Old Point and Thimble Light, and about midway between said places, collided with the schooner Mary P. Mosquito, a two-masted fishing vessel of 45 tons burden, about 85 feet long, 22 feet 7 inches beam; that the steamer was proceeding outward at the time on a course about east three-quarters north, and the schooner inward on a course west half south. The tide was ebb, wind blowing about 10 miles an hour from the southeast, the sea smooth and otherwise unobstructed, save by the vessels in collision. The steamer's contention is, briefly, that while proceeding outward she first observed the green light of the schooner about a quarter of a mile away, from a quarter to half a point on the starboard bow, when she sounded two whistles, starboarded her wheel, with a view of giving greater fairway, and,

without slackening her speed, proceeded on her journey at her full speed of 15 miles an hour; that suddenly the schooner changed her course by shutting in her green and showing her red light, apparently proceeding across the steamer's course, when danger signals were sounded, the jingle rung, and the engines reversed, and everything done to avoid a collision, but which proved ineffective, and the vessels collided; the schooner's bowsprit cutting into the steamer's starboard bow, and extending considerably into and across the ship, causing serious injury. The schooner's contention, on the other hand, is that, while proceeding on her course, she observed the steamer about a mile off, slightly on her port bow, showing both green and red lights; that the vessels thus approached each other until within a short distance apart, when the steamer sounded two blasts of her whistle, and suddenly changed her course to port, apparently with the intention of attempting to cross the schooner's bow, and, upon seeing this maneuver on the part of the steamer, orders were given to hard starboard the helm, with a view of swinging to port, and avoiding the collision, but which proved too late, and the vessels came together, the bowsprit of the schooner catching in the joiner work of the steamer on the latter's starboard side, breaking the schooner's jibboom, carrying away her topmast and head gear, and damaging her stem. Each vessel charges negligence on the part of the other—the steamer that the schooner failed to keep her course and speed, and changed her course suddenly; that she attempted to cross the steamer's bow; her failure to have a competent master, crew, and lookout; and, on the part of the schooner, that the steamer was also without a proper lookout; that she did not keep out of the way of the schooner, or allow sufficient space for safe navigation; that she failed to slacken her speed and stop or reverse; that she improperly changed her course; that she attempted to cross ahead of the schooner, and failed timely to observe the schooner approaching. Considerable evidence was taken, and it is largely upon a correct determination of the facts that the case turns.

J. W. Willcox, for Norfolk & Washington Steamboat Company.

H. H. Little, for The Mary P. Mosquito.

WADDILL, District Judge (after stating the facts as above). There is considerable conflict in the evidence, and as to some of which it is difficult to reconcile the apparent contradictions; and, without attempting to do so as to many of the details, the conclusion reached by the court upon what seems to it to be the essential and material questions is as follows:

First. That the schooner was negligent in that she failed to maintain her course and speed up to the time of the collision, which largely brought about the same. It is true she insists that the only change in her course was made when the collision was inevitable, and that that was to port, and not to starboard, with a view of lightening the blow of the collision as far as possible. But, taking all the facts and circumstances into account, including the injury to the steamer, and particularly that of witnesses not connected with the navigation of either vessel, the court finds that the version of the steamer as to the movements of the schooner at and about the time of the collision is sustained by the evidence, and that the vessels were proceeding green to green, as claimed by the steamer, until the schooner suddenly changed her course to starboard, and across the steamer's bow.

Second. That while it is true the schooner was negligent in changing her course as indicated, it by no means follows that the steamer was free from fault in bringing about this collision. The failure of her navigators earlier to see and observe the schooner's lights cannot

145 F.—61

be overlooked, nor can she be said to be free from fault in her navigation after they observed one of the schooner's lights. What was done might have proven harmless had not the schooner changed her course; but it was clearly negligence on the part of the steamer, on observing the green light a quarter to half a point on her starboard bow, and only a quarter of a mile away, to have proceeded at the speed of 15 miles an hour, only slightly varying her course to port. It was her duty to avoid the risk of collision, as well as the collision, and this she utterly failed to do, even after she saw the schooner.

Third. The schooner insists that the steamer was negligent in failing to have a competent lookout properly stationed at the time of the collision. The court is not prepared to say in this case that the location of the steamer's lookout, namely, on the forward part of the hurricane deck, immediately in front of the pilot house, instead of on the bow of the ship on the main deck, was not proper; but certain it is it does not appear to have entered materially into this collision, as it is quite apparent from the size of the two vessels, the character of the night, and the formation of the steamer's deck, that observation could have been made as well from the place the lookout was stationed as from the bow of the ship, which is usually and may be said to be the preferable place for the lookout to be stationed.

Fourth. Counsel for the schooner also insists that whatever error was committed by the schooner respecting her change of course was error in extremis, caused by the negligent navigation of the steamer, and for which the schooner should not be held liable. In this view the court does not concur. It is true that, had the collision occurred as claimed by the schooner, namely, that she was showing her red instead of her green light to the steamer, and that the steamer suddenly cut across her bows, and the schooner then changed her course to port to lighten the blow of the collision, the doctrine of error in extremis might apply. But this is not the way the collision occurred. The vessels approached each other green to green, and the steamer having ported, with a view of giving wider passageway, the sailing vessel neither continued on her course nor went to port, but, on the contrary, starboarded, thereby making a collision almost inevitable. The fact that the steamer starboarded shortly before the collision, and that the schooner did not at that time change her course to port, as claimed by her, is sustained by the evidence overwhelmingly. Indeed, there is much in her own evidence tending to show that the maneuver was to starboard, instead of to port.

It follows from what has been said that the collision was brought about by the combined negligence of the two vessels, and that, as a consequence, the damages arising therefrom, including the costs of court, should be borne equally by them.